IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| XUNYIN CHEN,<br><br>      Plaintiff/Petitioner,<br><br>    vs.<br><br>S. Dosanj, Warden, Federal Detention Center, Honolulu, Hawai'i; John Tobon, in charge of DHS Field Office in Hawai'i; Markwayne Mullin, Secretary of DHS; Todd Blanche, Attorney General, in their official capacities,<br><br>      Defendants/Respondents. | CIV. NO. 26-00191 SASP-WRT<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On April 9, 2026, Petitioner Xunyin Chen ("Chen") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), challenging the legality of his re-detention by Immigration and Customs Enforcement ("ICE") under the Due Process Clause of the Fifth Amendment, and seeking, among other things, his immediate release from ICE custody and/or reinstatement of release on his own recognizance, or, in the alternative, a bond hearing before an immigration judge within seven (7) days of this Court's Order. [Pet. Writ Hab. Corp. ("Pet."), ECF No. 1 at PageID.9.] For the reasons stated, Chen's Petition is hereby GRANTED.

## I.      FACTUAL BACKGROUND

Chen is a native and citizen of the Peoples Republic of China. [Pet., ECF No. 1 at PageID.8; Emilio Ortegon, Jr. ("Ortegon") Dec., ECF No. 13-1 ¶ 6.] Chen asserts that he fled China after "he resisted the [Communist Party of China ("CPC")] law" and was "detained for 15 days to force his wife to [be] subject[ed] to a tubal ligation surgery." [Pet., ECF No. 1 at PageID.6.] According to Chen, while in China, "[h]e was arrested, interrogated, detained, and

released with [the] condition o[f] reporting and promising [to] not participate in religious activities in China, or he would be subject to more penalty." [*Id.*]

On August 15, 2024, Chen entered the United States unlawfully at or near Tecate, California, without inspection, and was subsequently arrested and detained by United States Customs and Border Protection. [Resp. Exh. A, ECF No. 13-2 (Notice to Appear); Pet., ECF No. 1 at PageID.8; Ortegon Dec. ¶ 7.] That same day, Chen was released on his ow recognizance[1] into the United States "[i]n accordance with section 236[2] of the Immigration and Nationality Act [("INA")][3] and the applicable provisions of Title 8 of the Code of Federal Regulations"; and was simultaneously served with a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to section 240 of the INA.[4] [Pet., ECF No. 1 at PageID.3; Pet. Exh. 1, ECF No. 1-1 (Order of Release on Recognizance); Resp. Exh. A, ECF No. 13-2 (Notice to Appear).] In the NTA, ICE officials designated Chen as "an alien present in the United States without being admitted or paroled, or who arrived in the United State at any time or place other than as designated by the Attorney General," subject to removal pursuant to section 212(a)(6)(A)(i) of the INA. [Resp. Exh. A, ECF No. 13-2 (Notice to Appear).] Chen was *not* designated as an "arriving alien." [*See id.*]

---

[1] "Release on recognizance" in the immigration context is a form of "conditional parole." *See* 8 U.S.C. § 1226(a)(2)(B); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

[2] Section 236 is codified at 8 U.S.C. § 1226.

[3] Respondents assert that Chen was paroled under Section 212(d)(5)(A) of the INA. [*See* Ortegon Dec. ¶ 10.]

[4] The filing of a Notice to Appear with the immigration court initiates removal proceedings under Section 240 of the INA. *See* 8 U.S.C. § 1229(a). Section 240 proceedings refer to proceedings conducted by an immigration judge to decide the inadmissibility or deportability of an alien under the INA. *See* 8 U.S.C. § 1229a.

The regulations that authorize immigration authorities to release a noncitizen on his or her own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Such "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

As a condition of Chen's release, he was required to enroll in the Alternatives to Detention ("ATD") program as designated by the Department of Homeland Security ("DHS"), which required him to complete monthly in-person check-ins and GPS monitoring in San Diego, California. [Pet. Exh. 1, ECF No. 1-1 at PageID.12 (Order of Release on Recognizance); Ortegon Dec. ¶ 11.] On August 22, 2024, Chen was de-escalated from GPS monitoring to Smartlink, which allowed him to check-in remotely from his mobile device. [Ortegon Dec. ¶ 12.]

On or around October 15, 2024, Chen sought relief in his removal proceedings by filing an application for asylum. [*See* Ortegon Dec. ¶ 13.]

Respondents assert that Chen violated the conditions of the ATD program because he failed to complete three (3) monthly self check-ins through the Smartlink application, resulting in his termination from the subject program on September 3, 2025. [*See* Ortegon Dec. ¶¶ 14–17.] Chen asserts that he was not made aware that he had allegedly failed to check-in on the dates alleged; that Respondents allege incorrect check-in dates; and that his phone was forfeited by ICE, such that he cannot provide his Smartlink check-in records at this time to substantiate his assertions. [*See* Chen Dec., ECF No. 14-1 ¶¶ 1–5.]

According to Chen, on the morning of September 23, 2025, he attempted to check-in, and realized that the Smartlink application was not working. [*Id.* ¶¶ 6–7.] Unable to complete his check-in, Chen immediately reported to ICE's Honolulu office to seek help to restart Smartlink. [*Id.* ¶ 7.] There, Chen was rearrested "for non-compliance and termination of the ATD Program." [Ortegon Dec. ¶ 18; *see* Chen Dec. ¶ 8.] Chen is presently detained at the Federal Detention Center in Honolulu, Hawai'i ("FDC Honolulu"). [*See* Ortegon Dec. ¶ 18.]

One month after his rearrest and detention, on October 23, 2025, an immigration judge denied Chen's asylum claim and ordered him removed from the United States. [Ortegon Dec. ¶ 19; Resp. Exh. B, ECF No. 13-3 (Order of Immigration Judge).] On November 10, 2025, Chen filed an appeal with the Board of Immigration Appeals ("BIA"), which remains pending. [Ortegon Dec. ¶ 20; *see* Pet. Exh. 4, ECF No. 1-4 (Filing Receipt for Appeal).]

## II.        PROCEDURAL BACKGROUND

While detained at FDC Honolulu, on April 9, 2026, Chen filed his Petition, seeking, among other things, his immediate release from ICE custody and/or reinstatement of release on his own recognizance, or, in the alternative, a bond hearing before an immigration judge within seven (7) days of this Court's Order. [Pet., ECF No. 1 at PageID.9.] On the same day, this Court issued an Entering Order ("EO") directing Petitioner to serve Respondents no later than April 10, 2026, and setting a status conference for April 13, 2026. [ECF No. 6.]

Counsel for both parties appeared for a status conference on April 13, 2026. [ECF No. 10.] At the status conference, the parties agreed on a briefing schedule, and the Court directed Petitioner to file supplemental briefing. [*Id.*] The parties timely submitted their respective pleadings. [*See* ECF Nos. 11, 13–14.] On May 6, 2026, the Court received a letter from Respondents' counsel stating that "[t]he parties have agreed to request that the Court rule

on the Petition . . . without a hearing, subject to the Court's approval." [ECF No. 16.] On May 13, 2026, this Court issued an EO approving the parties' request for the Court to rule on the subject Petition without a hearing. [ECF No. 17.]

**III.        DISCUSSION**

> **A.        Jurisdiction**

As a preliminary matter, Respondents argue that this Court lacks jurisdiction to review Chen's claims for relief presented in his Petition. They contend that (1) "8 U.S.C. 1252(g) bars review of [Chen's] claims as the decision to detain [Chen] arises out of the decision to initiate removal proceedings"; and (2) "pursuant to 8 U.S.C. 1252(b)(9), any matter related to the removal of an alien needs to be raised before the appropriate court of appeals." [*See* Resp., ECF No. 13 at PageID.75.] This Court disagrees.

> Under 28 U.S.C. § 2241, district courts may grant writs of habeas corpus to prisoners who demonstrate they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings have long served as a mechanism by which aliens challenge Executive interpretations of immigration laws. *I.N.S. v. St. Cyr*, 533 U.S. 289, 306–07 (2001) (citations omitted). They also have served as a means through which aliens have challenged the legality of immigration-related detention. *Id.* at 301–06 (citations omitted). In this context, the law is clear: while district courts may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the requirements of the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).
>
> Under certain circumstances, however, Congress may modify or limit the right to habeas review, and over the years, it has specifically done so in the immigration context. Congress has enacted several statutory provisions limiting the circumstances in which judicial review of deportation decisions is available.

*Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1175 (D. Haw. 2025).

Respondents rely on two such provisions, but neither of them applies here. Specifically, Respondents rely on 8 U.S.C. § 1252(g),[5] which applies to decisions to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders," *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); and 8 U.S.C. § 1252(b)(9),[6] which applies to questions "arising from any action taken or proceeding brought to remove an alien from the United States." These provisions do not eliminate a district court's jurisdiction over all immigration-related detention claims, rather, they impose only narrow jurisdictional limits.

"The United States Supreme Court specifically addressed the narrow reach of Sections 1252 and 1226(e) in *Jennings v. Rodriguez*, [583 U.S. 281 (2018)], ultimately deciding that those statutes did not present a jurisdictional bar to an alien who was claiming entitlement to a bond hearing pending resolution of his immigration proceedings." *Rico-Tapia*, 806 F. Supp. 3d at 1176 (citing *Jennings*, 583 U.S. at 292–96). Further, with respect to Respondents' 8 U.S.C. § 1252(g) arguments, the Ninth Circuit Court of Appeals ("Ninth Circuit") has consistently held "that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997

---

[5] 8 U.S.C. § 1252(g) states the following: "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

[6] Under 8 U.S.C. § 1252(b)(9), "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."

(9th Cir. 2025). Accordingly, 8 U.S.C. § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, "but rather to enforce their constitutional rights to due process in the context of those proceedings").

Here, Respondents have failed to demonstrate that the above-cited provisions apply to Chen's claims. Chen is not challenging an order for removal, the commencement of removal proceedings, nor any act to adjudicate or execute a removal order. Rather, Chen is challenging his re-detention without notice or sufficient justification. As this Court explained in *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166 (D. Haw. 2025):

> a decision to detain is independent of an action taken to remove an alien; while the former is aimed at ensuring that the alien is not a flight risk or a danger to the community, the focus of the latter is the removal of the alien. *See Jennings*, 583 U.S. at 295 n.3. The majority in *Jennings*, in fact, discounted the very logic suggested by Respondents here. *See id.* (internal quotation marks omitted) ("The concurrence contends that detention is an action taken . . . to remove an alien and that therefore even the narrowest reading of arising from must cover the claims raised by respondents. . . . We do not follow this logic.").

*Id.* at 1176. Accordingly, "whether [Chen's] detention is subject to Section 1225 or 1226 is not a discretionary decision made by the Attorney General. It is, instead, a matter guided by the plain text of those provisions, the larger statutory scheme, and the reasoning set forth in the applicable caselaw." *Id.* at 1176–77. In challenging the constitutionality of his detention without a bond hearing, Chen is "enforcing [his] constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025). As "[h]abeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement,"

*Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)), Chen's challenge is properly within this Court's habeas jurisdiction.

### B.    Due Process[7]

Chen argues that the summary revocation of his conditional parole without notice or hearing, violates the Due Process Clause of the Fifth Amendment. [Pet., ECF No. 1 at PageID.7.] This Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citations omitted). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).

Chen's Due Process challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2

---

[7] For this Court's in-depth discussion of detention under Section 1225 or 1226, *see Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1177–81 (D. Haw. 2025).

(E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Court addresses each step, in turn, below.

### 1.       Protected Liberty Interest

Respondents contend that as an "applicant for admission" and "alien seeking admission" under 8 U.S.C. § 1225(b)(2)(A), Chen is subject to mandatory detention such that his alleged statutory and constitutional violations fail. [*See* Resp. ECF No. 13 at PageID.75–76, 84–87.] This Court disagrees.

As a preliminary matter, because "Section 1225(b) does not apply to aliens who are *already present in the country*, it does not apply to [Chen]." *Rico-Tapia*, 806 F. Supp. 3d at 1180. At the time of his detainment, Chen had been present in the United States for over a year. Moreover, the government previously represented to Chen, by releasing him on his own recognizance, that he had been classified as an "alien present in the United States" and released on conditional parole pursuant to 8 U.S.C. § 1226(a). [*See* Pet. Exh. 1, ECF No. 1-1 (Order of Release on Recognizance); Resp. Exh. A, ECF No. 13-2 (Notice to Appear).] Chen's "prior release pursuant to section 1226(a) thus created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk or danger." *See Sharan S. v. Chestnut*, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) (citing *Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest)). Other courts have also found, in similar circumstances, that once the government "elect[s] to proceed . . . under § 1226, [it] cannot . . . reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248 BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

"Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Pinchi*, 792 F. Supp. 3d at 1032 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *Id.* at 1032 (citations omitted).

For these reasons, the Court finds that Chen is not merely an "applicant for admission" at the border with minimal due process rights; Chen has a protected liberty interest in remaining out of custody. *See, e.g., Sharan S.*, 2025 WL 3167826 (holding that a noncitizen petitioner who allegedly violated reporting requirements of his 8 U.S.C. § 1226(a) conditional parole, possessed a protected liberty interest and was entitled to a bond hearing); *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (citation omitted) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1128–30, 1132–33 (E.D. Cal. 2025) (finding that petitioner had a protected liberty interest in his release).

*2.      Procedural Due Process*

As Chen has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia*, 806 F. Supp. 3d at 1182–83 (first citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (explaining that due process requires a pre-deprivation hearing before revocation of probation); and then citing *Morrissey,* 408 U.S. at 481–82 (explaining the same in the parole context)). In determining the specific dictates of due process, this Court must consider three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Court finds that all three factors support a determination that the government's revocation of Chen's parole without notification, reasoning, or an opportunity to be heard, denied him of his due process rights. First, as discussed above, Chen has a significant liberty interest in remaining out of custody pursuant to his release on his own recognizance. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citations omitted). Chen "had been out of custody for over a year in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that freedom." *Sharan S.*, 2025 WL 3167826, at \*10.

Second, the risk of an erroneous deprivation of such interest is high in this case, as Chen's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). And detention under this statute is justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. Although Respondents assert that Chen violated the terms of the ATD program at least three times [*see* Ortegon Dec. ¶¶ 14–17], Chen asserts that he complied with the ATD program and that on the first instance that he encountered an issue with the Smartlink application, he immediately self-reported to ICE to try to resolve the issue. [Chen Dec. ¶¶ 1, 4–7.] "No neutral arbiter has determined whether the [above disputed] facts show that [Chen] is a flight risk or danger to the community." *Sharan S.*, 2025 WL 3167826, at *10 (citing *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so.")). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). Because there have been no procedural safeguards to determine whether Chen's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is substantial." *Rico-Tapia*, 806 F. Supp. 3d at 1183.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Chen without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Alvarenga Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

On balance, the *Mathews* factors demonstrate that Chen is entitled to a bond hearing.

## IV.        CONCLUSION AND ORDER

For the reasons stated, this Court ORDERS the following:

1.       Chen's Petition for Writ of Habeas Corpus, ECF No. 1, is GRANTED.

2.       Chen is entitled to a bond hearing before a neutral arbiter in immigration court, and Respondents shall provide this hearing within seven (7) days of the date of this Order. At such bond hearing, Respondents shall bear the burden of proving, by clear and convincing evidence, that Chen is a flight risk or danger to the community such that his physical custody is legally justified.

3.       Respondents shall file a status report within ten (10) days of the date of this Order, confirming whether a bond hearing was held and, if so, the outcome of that hearing.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 18, 2026.



Shanlyn Park
United States District Judge